Argued and submitted August 5, 1998, reversed in part and remanded; otherwise
affirmed in part February 17, petition for review denied
July 6, 1999 (329 Or 61)

## STATE OF OREGON,
*Respondent,*

*v.*

## ROBERT WILLIAM BRUST,
*Appellant.*

(951318; CA A95014)

974 P2d 734

Jesse Wm. Barton, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

LANDAU, P. J.

---

* Deits, C. J., *vice* Riggs, J., resigned.

## LANDAU, P. J.

Defendant appeals a judgment of conviction for one count each of possession of a controlled substance and unlawful possession of a firearm. He assigns error to the trial court's denial of a motion for judgment of acquittal on the firearms charge. He argues that the state failed to prove the necessary element of his failure to have a license to carry the firearm. We agree with defendant, reverse the firearms conviction, and remand for resentencing.

Defendant was stopped for a traffic offense. In the course of the stop, defendant admitted that he had methamphetamine in the car. Police officers searched the car and found, among other things, a .25 caliber semi-automatic handgun. The officers did not ask defendant if he had a concealed handgun permit. Defendant told the officers that the gun belonged to his father.

At trial, the state offered evidence of the foregoing facts. It offered no evidence that defendant did not possess a concealed handgun permit. Defendant moved for a judgment of acquittal on the ground that the state had failed to establish all the elements of the offense, that is, that the state failed to prove that the gun was readily accessible. He also challenged on constitutional grounds the statute setting forth the elements of the offense. The trial court denied the motion.

Defendant took the stand in his own defense. He testified that he did not know how to carry a handgun, but that he wanted to carry it where it was legal:

> "I don't know how to carry it, I mean, I assumed that it would be okay to carry it in a zippered pouch, more so than up on my dashboard. I just figured that was the most legal way to carry it."

After defendant rested, he again moved for a judgment of acquittal on the same two grounds as those he previously asserted. The trial court again denied the motion.

The trial court instructed the jury. Defendant renewed his motion for judgment of acquittal, this time adding the ground that the state failed to prove that he did not

have a license to carry a concealed weapon. The state opposed the motion on the ground that *State v. Gerlack*, 87 Or App 184, 741 P2d 926 (1987), holds that the state is not required to prove lack of a license as an element of the offense and that proof of possession of a license is instead an affirmative defense. The trial court denied the motion, expressly relying on *Gerlack*.

On appeal, defendant asserts that the trial court erred in denying his motion for judgment of acquittal. He contends that the statute defining the elements of the crime requires the state to prove his failure to possess a license. He acknowledges that *Gerlack* is to the contrary, but asserts that the vitality of *Gerlack* has since been openly questioned by this court and that the case has been implicitly interred by the Supreme Court's more recent decision in *State v. Vasquez-Rubio*, 323 Or 275, 917 P2d 494 (1996).

The state responds first by suggesting that defendant's assignment of error was not preserved, because it was untimely raised before the trial court. According to the state, although defendant timely moved for a judgment of acquittal, he did so on other grounds and did not raise the argument asserted on appeal until after the trial court instructed the jury. On the merits, the state contends that this court may have questioned *Gerlack* but has never overruled it. The state further asserts that *Vasquez-Rubio* is distinguishable. In the alternative, the state argues that, even if it was required to prove that defendant lacked a license to carry the handgun, it did so.

■ We begin with the state's contention that defendant's assignment of error was not preserved. It is true that the time for a motion for a judgment of acquittal is before the jury has been instructed. Nevertheless, the state entered no objection to defendant's untimely motion at trial. The matter obviously was fully argued to the trial court, and the trial court had the opportunity to rule—in fact, did rule—on the merits of the parties' contentions. Particularly given that the gravamen of defendant's contention is the legal insufficiency of the state's proof, we find no reason not to consider the matter. *Cf. State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990) (failure of state to establish an element of crime raised for first

time on appeal held reviewable); *State v. Willy*, 36 Or App 853, 856-57, 585 P2d 762 (1978) (contention that "there was absolutely no evidence from which the defendant could have been convicted" reviewable for the first time on appeal).

■ We turn then to defendant's contentions regarding the sufficiency of the state's proof. ORS 166.250 provides, in part:

"(1) Except as otherwise provided in this section, * * * a person commits the crime of unlawful possession of a firearm if the person knowingly:

"* * * * *

"(b) Carries concealed and readily accessible to the person within any vehicle which is under the person's control or direction any handgun, without having a license to carry such firearm as provided in ORS 166.291 and 166.292 * * *."

ORS 166.291 sets forth the procedure by which a person is required to obtain a concealed handgun license. ORS 166.292 provides, in part:

"(2) Failure of a person who carries a concealed handgun also to carry a concealed handgun license is prima facie evidence that the person does not have such a license."

In *Gerlack*, we held that ORS 166.250 does not require the state to prove, as an element of the offense, that a person did not have a license to carry a concealed handgun. In arriving at that conclusion, we did not examine the language of the statute or any other evidence of legislative intent. We simply held that

"[i]t would be unreasonable to conclude that the legislature intended to require the state to search and prove the records of each county in Oregon to determine whether a defendant has a license to carry a concealed weapon."

*Gerlack*, 87 Or App at 187.

We questioned that holding in our more recent opinion in *State v. Vasquez-Rubio*, 134 Or App 646, 897 P2d 324 (1995). In that case, we examined a similarly worded statute that made it a crime to "knowingly possess[ ] any machine gun * * * [not] registered as required under federal law."

ORS 166.272. The defendant in that case argued that it was the state's obligation to prove that the machine gun that he possessed was not registered as required by federal law. Citing *Gerlack*, the state argued that the statute imposed no such obligation and, instead, made proof of registration an affirmative defense. We rejected the state's reliance on *Gerlack*, among other things, because *Gerlack* was probably improperly decided:

> "[T]he decision did not evaluate the language of the statute at issue or even attempt to determine what the legislature intended that language to mean. It simply concluded that, because of the unreasonableness of the consequences of reading the statute as it was written, the legislature presumably did not intend the statute to be read in that fashion. As we said in *Southwood Homeowners v. City Council of Philomath*, 106 Or App 21, 24, 806 P2d 162 (1991),

>> " 'the "absurd results" doctrine should be used sparingly, because it entails the risk of judicial displacement of legislative policy on the basis of judicial speculation that the legislature could not have meant what it unmistakably said.'

> "Once we have determined that the language of the law requires one party or the other to establish a predicate to prevailing, it is not for us to second-guess the legislature's policy choice. If the allocation of a burden of proof is indeed unreasonable, then that is a matter for the legislature to address."

*Vasquez-Rubio*, 134 Or App at 653. We then examined the language of the statute and determined that nothing in its wording suggested that proof of registration was intended to be an affirmative defense.

The Supreme Court affirmed. The court held that the statute at issue in that case

> "provides that 'a person commits the crime of unlawful possession of a machine gun' when that person 'knowingly possesses any machine gun * * * not registered as required under federal law.' According to the text, a person who merely 'knowingly possesses any machine gun' does not commit a crime. The statute continues to describe the offense. A person commits a crime under ORS 166.272 only

if that person 'knowingly possesses any machine gun * * * *
*not registered as required under federal law.*"

*Vasquez-Rubio*, 323 Or at 278 (emphasis in original). The court rejected the state's contention that registration was intended to be an affirmative defense, not an element of the crime itself. The court held that, when the legislature intends a provision to describe an affirmative defense, it usually does so by language demonstrating that intention. It offered as examples, such terms as "except," "however," and "provided that." Turning to the language of ORS 166.272, the court concluded:

> "The phrase 'not registered as required under federal law' immediately follows another element of the crime, that the person 'knowingly possess[ ] any machine gun.' The phrase continues to describe the offense of unlawful possession of a machine gun. Significantly, it is not set apart from the rest of the definition of the offense by the use of commas and words of limitation, such as 'except,' 'however,' or 'provided that.' Indeed, 'not registered as required under federal law' is an adjectival clause. The phrase does not create an exception. Instead, it functions as an adjective by modifying or further defining the noun, machine gun. In other words, the statutory phrase is a necessary ingredient of the definition of unlawful possession of a machine gun."

*Vasquez-Rubio*, 323 Or at 280 (footnote omitted). As for the state's argument that treating failure to register as an element of the offense would lead to unreasonable results, the court stated:

> "When the legislative intent is clear from an inquiry into text and context, or from resort to legislative history, * * * it would be inappropriate to apply the absurd-result maxim. If we were to do so, we would be rewriting a clear statute based solely on our conjecture that the legislature could not have intended a particular result."

*Id.* at 283.

It is clear that *Gerlack* no longer can be regarded as good law. Whether ORS 166.250(1)(b) requires the state to prove that defendant did not have a license to carry a concealed handgun cannot be determined merely by invoking the absurd results rule, but must instead be determined by

examining the language of the statute in its context and, if necessary, by resort to legislative history and relevant rules of construction.

ORS 166.250(1)(b) provides that a person commits the crime of unlawful possession of firearms when the person

"[c]arries concealed and readily accessible to the person within any vehicle which is under the person's control or direction any handgun, without having a license to carry such firearm * * *."

According to the text, a person who merely "carries concealed and readily accessible" a handgun in their vehicle does not commit a crime. The statute requires more than that. It requires that the person carry the concealed and readily accessible handgun within the vehicle without a license to do so. As in the case of the statute at issue in *Vasquez-Rubio*, the statute at issue in this case does not set apart the phrase "without having a license to carry such firearm" by words of limitation such as "except," "however," or "provided that." Instead, the phrase follows immediately after the other elements of the offense. Grammatically, the clause operates as an adverbial clause, modifying the verb "carries." In other words, as in *Vasquez-Rubio*, the disputed phrase in this case describes a necessary ingredient of the definition of the crime of unlawful possession of a concealed weapon.

The context of the statute bears out what is suggested by our textual analysis. ORS 166.292, to which ORS 166.250(1)(b) expressly refers, provides that failure to carry a handgun license is "prima facie evidence that the person does not have such a license." If the state were correct that it is the defendant who must prove that he or she has a license, then ORS 166.292 would make no sense, for the statute speaks of "prima facie evidence that the person *does not have such a license.*" (Emphasis added.)

We conclude that ORS 166.250(1)(b) requires the state to prove, as an element of the offense, that defendant did not have a license to carry the firearm as required by law. We turn then to the state's alternative argument, that there is evidence in the record that defendant did not possess a license to carry the handgun found in his vehicle. According

to the state, defendant testified that he did not know "how to carry" a handgun, that is, whether it should have been in a zippered pouch as opposed to placed on the dashboard of the vehicle. The state reasons that, if defendant had obtained a license, he would have known how properly to carry the weapon.

We review the record to determine whether there is evidence from which the jury could infer beyond a reasonable doubt that an element of the crime has been proven. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). In this case, defendant was not questioned about whether he had a license to possess the handgun that was found in his vehicle. There likewise was no evidence that, had defendant obtained a license, he would have learned the proper method of carrying a weapon. We therefore reject the state's contention that defendant's apparent ignorance of the proper method of carrying a weapon is sufficient to establish that he had no permit to carry the weapon.

Conviction for unlawful possession of a concealed weapon reversed; remanded for resentencing on remaining conviction; otherwise affirmed.