Argued and submitted March 2, 2000, affirmed February 14, 2001

# STATE OF OREGON,
*Respondent,*

*v.*

# ALAN R. BARNES,
*Appellant.*

## (98-3375-CR; CA A107389)

18 P3d 1108

John Henry Hingson III argued the cause and filed the brief for appellant.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

HASELTON, P. J.

---

* Deits, C. J., *vice* De Muniz, P. J., resigned.

## HASELTON, P. J.

Defendant appeals his conviction for driving under the influence of intoxicants (DUII). ORS 813.010. He argues on appeal that the trial court erred in denying his motion to suppress evidence of observations of his conduct by a police officer after defendant stepped out of his vehicle.[1] We affirm.

The only evidence at the suppression hearing was from three of the officers present at the scene where defendant was arrested. On the evening of October 31, 1998, Officer Romano of the Klamath Falls Police Department saw a speeding pickup truck make two unsignaled lane changes. He started after the pickup truck, but then observed an Oldsmobile being driven in an unsafe manner and stopped that vehicle based on his suspicion that the driver was intoxicated. The Oldsmobile pulled into the Jefferson Square parking lot. During the traffic stop of the Oldsmobile, the pickup truck that Romano had observed earlier pulled in behind Romano's patrol car. Deputy Bicknell arrived on the scene and asked Romano why the pickup truck was there. Romano told Bicknell that he had observed the pickup truck speeding. Bicknell and a third officer, Trooper Campbell, then approached the pickup truck, and Bicknell asked its driver, defendant, why he was parked there. Defendant replied that he was not doing anything. Bicknell explained to defendant that the officers were conducting a traffic stop of the Oldsmobile and that they were concerned for their safety about someone being parked behind them. Defendant responded that the person in the Oldsmobile was a friend of his and that he was concerned about her.

In the course of his conversation with defendant, Bicknell noticed an odor of alcoholic beverage coming from the pickup truck. He asked defendant if he had been drinking, and defendant responded that he had. Bicknell asked for defendant's driver's license. Defendant handed Bicknell his

---

[1] Defendant also has moved that we take judicial notice of the contents of a DWI Detection and Standardized Field Sobriety Testing Student Manual published by National Highway Traffic Safety Administration and distributed by the Oregon State Police. We decline to do so because the materials in question are not relevant to the dispositive issue in this case.

driver's license and got out of his pickup truck. No evidence in the record indicates whether defendant left the pickup truck spontaneously, or whether Bicknell requested or ordered defendant to leave the pickup truck. As defendant got out of the pickup truck, Bicknell noticed that defendant had trouble balancing and that his eyes were bloodshot and watery. Campbell also observed signs of intoxication. Bicknell asked defendant if he would perform field sobriety tests, and defendant refused. Bicknell arrested defendant for driving under the influence of intoxicants and handcuffed him. Defendant then offered to perform the field sobriety tests and performed poorly on them. Defendant was taken to the police station, where he was given a Breathalyzer test, which revealed a blood alcohol content of 0.14.

The trial court determined that Bicknell's stop of defendant was lawful under ORS 810.410(3) and that Bicknell had a subjective belief that defendant was under the influence of intoxicants before defendant performed field sobriety tests. The court made no finding as to whether Bicknell had either subjective or objective probable cause to believe that defendant was driving under the influence of intoxicants before defendant got out of the pickup truck. The court further held that, although there was no evidence that Bicknell ordered defendant out of his vehicle, even assuming that that was the case, Bicknell was justified in doing so because he had reasonable suspicion that defendant was driving under the influence of alcohol. The court therefore denied defendant's motion to suppress evidence gained after he got out of his pickup truck. Defendant was tried to the court on stipulated facts, including the facts recited above, and was convicted of DUII.

On appeal, defendant argues that the trial court erred in failing to suppress evidence obtained by the police after he got out of his pickup truck. He contends that "reasonable suspicion" could not justify an officer ordering a suspect to get out of a vehicle, and that the officer in this case lacked "probable cause" to do so. *Compare, e.g., State v. Berg*, 140 Or App 388, 391, 914 P2d 1110 (1996) (reasonable suspicion justified officer *asking* defendant to step out of car, and defendant voluntarily consented). Alternatively, defendant asserts that if Bicknell asked, rather than ordered, defendant to

leave the pickup truck, then the state failed to meet its burden of proof that defendant voluntarily consented to do so. Defendant contends that when he got out of his pickup truck, Bicknell was able to observe that which he would otherwise have been unable to observe, *e.g.*, signs of defendant's intoxication. Defendant argues that a "search," as that term has been defined in Oregon constitutional case law, therefore occurred at the point he got out of the pickup truck, and that Bicknell lacked probable cause to conduct such a search.

The state responds, first, that the record contains no evidence as to how or why defendant got out of the pickup truck. It further argues that no seizure for purposes of Article I, section 9, of the Oregon Constitution, occurred until defendant was out of the vehicle, at which point the officer had developed probable cause to arrest defendant for DUII.[2]

As noted above, the record is completely devoid of any evidence about whether defendant got out of his pickup truck on his own initiative or, instead, was asked or ordered out by Bicknell. Defendant asserts that this lack of evidence must lead to the conclusion that "the state failed to carry its burden of proving consent by a preponderance of the evidence." It is true that "[t]he burden to establish the lawfulness of a warrantless search and seizure is on the state." *State v. Sargent*, 323 Or 455, 461, 918 P2d 819 (1996).[3] Also, "[t]he state has the burden of proving by a preponderance of the evidence that consent is voluntary." *State v. Guzman*, 164 Or App 90, 99, 990 P2d 370 (1999), *rev den* 331 Or 191 (2000). Neither of those principles, however, provides any basis for *assuming* that a search or seizure has occurred at a particular time, in the absence of any evidence that such a search or seizure has occurred. Thus, the premise for most of defendant's contentions on appeal is flawed. Defendant's argument boils down to an assertion that, because the state bore the burden of

---

[2] The state makes various other arguments that we do not need to reach in this case.

[3] That allocation of burden flows from ORS 133.693(4), which provides that, with respect to motions to suppress, "the burden of proving by a preponderance of the evidence the validity of the search is on the prosecution." *See generally State v. Tucker*, 330 Or 85, 997 P2d 182 (2000) (state had burden of proving that warrantless search was valid).

proof at the suppression hearing to establish the lawfulness of a warrantless search and seizure, its burden could not be met by mere proof that an officer had probable cause at the time that—*as far as the evidence shows*—the seizure occurred. Rather, defendant contends, in effect, that the state had the burden of affirmatively *disproving* that a seizure had occurred at some earlier point in time than that established by the evidence. Defendant cites no authority for this novel proposition, and we are aware of none.

■ The mere act of observing a person getting out of a vehicle is not a "search." *See, e.g., State v. Ainsworth*, 310 Or 613, 621, 801 P2d 749 (1990) ("officer's unaided observation, purposive or not, from a lawful vantage point is not a search under Article I, section 9"). After defendant had left his pickup truck, the officer had knowledge of the following facts and circumstances: that defendant had been speeding and driving erratically; that defendant smelled of alcohol and admitted that he had been drinking; that defendant had bloodshot, watery eyes; and that defendant had difficulty balancing as he got out of the truck. At that point, the officer arrested defendant, placing him in handcuffs. Certainly, when the officer arrested him, defendant was seized for purposes of Article I, section 9, of the Oregon Constitution. However, there is ample evidence that Bicknell had subjective and objective probable cause to arrest defendant for DUII at that point. *See generally State v. Spruill*, 151 Or App 87, 948 P2d 726 (1997); *State v. Wetzell*, 148 Or App 122, 939 P2d 106, *rev den* 325 Or 621 (1997) (both finding probable cause under comparable circumstances).

In summary, we need not decide whether the trial court erred in articulating a "reasonable suspicion" standard rather than a "probable cause" standard, because defendant was not entitled to suppression of the evidence gained when he got out of his pickup truck in any case. That is so because, as far as this record shows, no unlawful search or seizure had occurred when defendant got out of his pickup truck. The trial court correctly denied defendant's motion to suppress.

Affirmed.